UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Patrice Compere**

|  |  |
|---|---|
| **v.** | Case No. 18-cv-1036-PB |
|  | Opinion No. 2019 DNH 017 |

**Kirstjen M. Nielsen, Secretary
of Homeland Security, et al.**

<u>MEMORANDUM AND ORDER</u>

Patrice Compere, a Haitian national, is subject to an outstanding removal order.  Although he has challenged the order by filing a motion to reopen his case with the Board of Immigration Appeals ("BIA"), the government plans to return him to Haiti without acting on his motion.  Compere argues in a habeas corpus petition that the conditions he will face in Haiti if he is removed will make it impossible for him to litigate his motion.  He therefore seeks a stay of the removal order to permit him to obtain a ruling on the motion from the BIA and, if necessary, to seek judicial review of any adverse ruling in the court of appeals.[1]

The government has responded by arguing that I lack the power to interfere with its plan to execute the removal order because Congress has stripped district courts of their habeas corpus jurisdiction to consider challenges to removal orders.  I

---

[1] Compere also seeks an individualized bond hearing.  I address that request in a separate Memorandum and Order.

1

reject this argument because the jurisdiction-stripping

provisions on which the government relies cannot be used to deny

Compere his right to habeas corpus relief without violating the

Constitution's Suspension Clause.  I also grant Compere the

relief he seeks because removing him to Haiti before he can

litigate his motion to reopen would violate his rights under

federal law.

## I.   Background

### A.   Patrice Compere

Compere has lived in the United States since he was two.

His grandmother, mother, and siblings are United States

citizens.  So are his two children, ages four and nine.

Compere, however, is not.  Born in Haiti in October, 1987, he

left the country and entered the United States on humanitarian

parole in August, 1989.  He has not been back to Haiti since.[2]

Compere has had trouble with the law.  He has drug

convictions for possession to distribute a Class A substance

(Heroin) in 2011, possession of a Class B substance (Suboxone)

---

[2] Compere's mother entered the country as a derivative
beneficiary of his grandmother, but Compere has not been
considered a derivative beneficiary himself.  He claims in
another action filed in the District of Massachusetts that the
United States Citizenship and Immigration Services erred when it
denied his mother's request to adjust his status.  See Compere
v. Riordan, No. 1:18-cv-12431-MPK (D. Mass, Nov. 21, 2018),
Complaint Doc. No. 1.  Compere asserts, however, that the
District of Massachusetts' action has no direct bearing on the
present case.

in 2015, and possession of a Class B substance (Adderall-Amphetamine) in 2016.  Doc. No. 7-3 at 2.[3]

**B.    Procedural history**

Compere has been in detention since his arrest by Immigration and Customs ("ICE") officials on October 2, 2017.

The circumstances that led to his arrest are disquieting. See Transcript of Immigration Court Proceedings, Doc. No. 13-2 at 49-50.  After serving his most recent criminal sentence, Compere asked his probation officer how to obtain a work authorization.  The officer recommended that he contact ICE. Compere followed that advice and met with ICE Officer Hamel who told Compere to submit certain documents to ICE, such as his mother's naturalization certificate.  Compere provided the documents Hamel was seeking but he did not hear from ICE again for two months.  On October 2, 2017, Compere called Hamel and was informed that he would be required to attend a hearing before an immigration judge.  Compere went to the Immigration Court in Boston and called Hamel again, who informed him that the hearing would not occur that day.  Instead, he was arrested and taken into ICE custody, where he remains today.

---

[3] The record contains inconsistent information concerning the dates and categories of Compere's drug offences.  The inconsistencies, however, are immaterial because he does not dispute that he has multiple valid drug convictions.

ICE began removal proceedings against Compere by filing a
Notice to Appear ("NTA") in the Boston Immigration Court on
October 24, 2017.[4]  Compere did not challenge the government's
contention that he was removable.  Instead, he claimed that he
was entitled to a deferral of removal under the Convention
Against Torture ("CAT").  He based his CAT claim on his
contention that he will be imprisoned and tortured by the
Haitian government if he is removed to Haiti.

An immigration judge held two hearings in March of 2017 and
ultimately concluded both that Compere was removable for the
reasons cited in the NTA and that he was not entitled to a
deferral of removal under the CAT.  See Doc. No. 7-3 at 2, 15.
Compere submitted that it is more likely than not that he will
be incarcerated and tortured if returned to Haiti because he is
a criminal deportee and his uncle is a prominent opposition
political figure who ran for president of Haiti in 2015.  See
Doc. No. 7-3 at 13.  The Immigration Court recognized that "grim
prospects await Haitian criminal deportees."  Doc. No. 7-3 at
13.  It also noted that Compere does not have any close family

---

[4] The NTA alleged that Compere was removable as an inadmissible
alien because:  (1) he lacked a proper immigrant visa, see 8
U.S.C. § 1182(a)(7)(A)(i)(I); (2) the Attorney General had
reason to believe that he was a trafficker in controlled
substances, see 8 U.S.C. § 1182(a)(2)(C)(i); and (3) he had
controlled substance convictions, see 8 U.S.C.
§ 1182(a)(2)(A)(i)(II).

relatives in Haiti and Marie Gabrielle Renois, Compere's aunt and the wife of a Haitian anti-corruption journalist and politician Clarens Renois, currently resides in Mali because she does not feel safe in Haiti. Doc. No. 7-3 at 14.

Nonetheless, the Court rejected Compere's CAT claim. It concluded that "prior Board of Immigration Appeals precedent has established that the conditions within Haitian prisons are generally insufficient to satisfy a respondent's burden for relief under the Convention Against Torture." Doc. No. 7-3 at 14 (citing Matter of J-E-, 23 I&N Dec. 291 (BIA 2002)). The J-E- decision demonstrated, said the Court, that "there is no evidence that [Haitian authorities] are intentionally and deliberately creating and maintaining such prison conditions in order to inflict torture." Doc. No. 7-3 at 14 (citing J-E- at 301). The Immigration Judge also rejected Compere's argument that he would face a heightened risk due to his relationship to Clarens Renois, because Compere is a fairly distant relative and there is "considerable evidence that Mr. Renois's family has not been tortured." Doc. No. 7-3 at 15. Accordingly, the Immigration Court found that "it is not more likely than not that the respondent would be tortured by the government or with its acquiescence were he to be returned to Haiti." Doc. No. 7-3 at 15.

Compere appealed to the Board of Immigration Appeals
("BIA") and the BIA affirmed the Immigration Judge's denial of
his application for deferral of removal.  See Doc. No. 9-4.  He
then appealed to the First Circuit Court of Appeals on October
25, 2018, and moved for a stay of removal in that court the next
day.

Compere argued in his motion for a stay that the BIA relied
on the wrong precedent in rejecting his CAT claim.  The Circuit
ultimately denied Compere's motion on November 7, 2018,
explaining that

> [p]etitioner fails to adequately argue and show that
> he has a colorable legal or constitutional issue that
> surmounts the jurisdictional bar.  See 8 U.S.C. §
> 1252(a)(2)(C) & (D).  Moreover, insofar as his
> arguments might be construed as raising a colorable
> legal issue, he does not make a strong showing of
> likely success on the merits.  See Nken v. Holder, 556
> U.S. 418, 434 (2009).

Compere v. Sessions, No. 18-2058 (1st Cir. Nov. 7, 2018).[5]

Compere filed a motion to reconsider that order the next day.

---

[5] Subsections 1252(a)(2)(C) and 1252(a)(2)(D) limit but do not
entirely prohibit judicial review for aliens who are removable
due to certain criminal violations.  Subsection 1252(a)(2)(C)
purports to strip federal courts of jurisdiction to review final
orders against such aliens.  See 8 U.S.C. § 1252(a)(2)(C).  That
section does not, however, "preclude[e] review of constitutional
claims or questions of law raised upon a petition for review
filed with an appropriate court of appeals . . . ." See 8 U.S.C.
§ 1252(a)(2)(D); cf. Mejia v. Holder, 756 F.3d 64, 67 (1st Cir.
2014) (holding that court had jurisdiction under § 1252(a)(2)(D)
to evaluate whether BIA erred in concluding that shoplifting is
a crime of moral turpitude under Massachusetts law).  Thus,
these sections proscribe judicial review of factual

The Circuit denied Compere's motion on November 19, 2018.  See

Doc No. 9-6.  Compere moved to dismiss his appeal on January 10,

and the Circuit dismissed his petition on January 11, 2019.  See

Compere, No. 18-2058 (1st Cir. Jan. 11, 2019).

Compere filed a motion to reopen his case with the BIA

November 8, 2018, the day after the Circuit denied his motion

for a stay of removal.  His motion asserts that he plans "to

introduce newly obtained evidence, material to his claim of

deferral of removal under the Convention against Torture, that

was unavailable at the time of his hearing before the Boston

Immigration Court."  See Doc. No. 9-8 at 2.  The next day, he

moved the BIA to stay his removal on an emergency basis pending

resolution of his motion to reopen.  Doc. No. 9-9 at 2.  The BIA

denied that motion on December 27, 2018.  See Doc. No. 18-2 at

2.[6]

Compere supports his motion to reopen with a new expert

declaration by Dr. Chelsey L. Kivland, an Assistant Professor in

---

determinations while preserving review by the court of appeals
of constitutional claims and questions of law.

[6] That decision reads in full: "Counsel for the respondent has
applied for a stay of removal pending consideration by the Board
of a motion to reopen.  After consideration of all information,
the Board has concluded that there is little likelihood that the
motion will be granted.  Accordingly, the request for a stay of
removal is denied."  Doc. No. 18-2 at 2.

the Department of Anthropology at Dartmouth College.[7]  See Doc.

No. 9-14.  Kivland asserts that Compere will likely face

prolonged detention upon arrival in Haiti because he speaks very

little French or Haitian Creole and because "Mr. Compere reports

that he has no family in Haiti with whom he is in contact."

Doc. No. 9-14 at 2.  She submits that because Compere is a

deportee with drug convictions, "he will likely be detained and

interrogated about his drug crimes and drug-trafficking

activities," which is "likely to lead to prolonged detention as

he will be subject to additional processing and scrutiny."  Doc.

No. 9-14 at 2-3.  Kivland also claims that, due to Compere's

relationship with Renois, he "is likely to be detained . . . as

a political threat."  Doc. No. 9-14 at 3.  Even if he is not

detained upon arrival, Kivland declares, he faces a heightened

risk of imprisonment because police in Haiti unfairly target

criminal deportees with drug convictions.  Doc. No. 9-14 at 3.

Kivland avers that Haiti uses inhumane prison conditions as

part of an intentional effort to punish and deter criminal

---

[7] Dr. Kivland's research area is remarkably well-tailored to the questions before this court.  She has traveled to Haiti many times in the last decade and lived in Port-au-Prince from 2008 until 2010.  She is preparing a new research project, funded by the National Science Foundation, "focused on criminal deportation to Haiti."  She has interviewed ten criminal deportees in Haiti, met with Haitian authorities in the Haitian National Police, and interviewed officials in the agency responsible for "the processing and surveillance of criminal deportees in Haiti."  See Doc. No. 9-14 at 1.

behavior.  Doc. No. 9-4 at 3.  She contends that the "squalid conditions and cruel treatment [in Haitian prisons] do not simply reflect the weak infrastructure of a government that is under-resourced, but rather intentional decisions on the part of the Haitian government to under-fund this sector."  Doc. No. 9-14 at 4 (citing Erin Mobekk, *UN Peace Operations: Lessons from Haiti*, 1994-2016 (2017)).  The poor conditions "are part of an intentional effort to instill in the public fear of prison," according to Kivland.  Doc. No. 9-14 at 4.  She quotes a police officer for the first circumscription of Port-au-Prince, whom she interviewed in March, 2018, saying that prison should produce a "kind of misery which makes the misery of poverty look like paradise."  Doc. No. 9-14 at 4.  "Such comments do not merely reflect the opinion of individuals," Kivland contends, but rather "the dominant beliefs about punishment and deterrence that inform a system in which prison is a space of pain, suffering, and possible death."  Doc. No. 9-14 at 4.

Kivland also submits that Compere risks "lynching by the Haitian public."  Doc. No. 9-14 at 5.  This is because, she explains, Compere is a criminal deportee and because he is identifiable as an American due to his appearance and lack of French and Creole.  Doc. No. 9-14 at 5.

Compere filed his habeas corpus petition in this Court on November 9, 2018.  That day, I ordered that he not be

transferred to a facility outside of this Court's jurisdiction until further order of the Court.  See Endorsed Order on Doc. No. 1.  On November 15, I reaffirmed that order and required the government to provide the Court with at least 48 hours' notice of any scheduled removal or transfer outside the jurisdiction of the Court.  Doc. No. 6.  On November 21 the government moved to vacate the November 15 order and announced its plan to transfer Compere to a staging area in Louisiana on December 10, 2018, with removal to Haiti scheduled for the week of December 17, 2018.  See Doc. No. 8-1.  I denied the motion to vacate on December 6, 2018.

## II.  Analysis

Compere bases his habeas corpus petition on 28 U.S.C. § 2241, which broadly grants federal courts the power to award habeas corpus relief to petitioners who are in custody in violation of federal law.  Congress, however, has stripped Article III courts of jurisdiction over many types of immigration disputes and instead channeled those disputes into administrative proceedings.  See generally Aguilar v. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 11 (1st Cir. 2007) (explaining that Congress intended to channel rather than bar judicial review of immigration disputes).

The government invokes two jurisdiction-stripping provisions in arguing that this Court lacks habeas corpus

jurisdiction.  Compere responds by contending the jurisdiction-stripping provisions are unenforceable because, at least in his case, they violate the Constitution's Suspension Clause, which prohibits the government from suspending the writ of habeas corpus except in cases of rebellion or invasion.  U.S. Const. Art. I, § 9, cl. 2.

I evaluate the government's jurisdictional challenge by first discussing the jurisdiction-stripping provisions on which it is based and then describing how the Suspension Clause limits congressional power to suspend the Court's habeas corpus jurisdiction.  Because Compere's claim is focused on his right to litigate and obtain judicial review of his motion to reopen, I next examine the law that guarantees him that right and then explain why the jurisdiction-stripping provisions cannot be applied to deny this Court jurisdiction to review Compere's petition.

After determining that I have jurisdiction, I evaluate the evidence Compere cites to support his claim and conclude that he is entitled to a stay until the BIA acts on his motion to reopen and he has been given an opportunity to seek relief in the court of appeals from any adverse ruling.

## A.    Jurisdiction

### 1. Jurisdiction-Stripping Provisions

Congress has enacted several provisions that limit habeas corpus jurisdiction over immigration matters, two of which potentially apply in this case.[8]  The first, 8 U.S.C. § 1252(b)(9), provides that "judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section."  It then deprives district courts of jurisdiction to review such orders, leaving an appeal to the court of appeals from a final agency order as the only form of judicial review. The second provision, 8 U.S.C. § 1252(g), strips district courts of jurisdiction "to hear any case or claim by or on behalf of any alien arising from the decision or action by the Attorney

---

[8] Congress has adopted other jurisdiction-stripping provisions that are plainly inapplicable here.  For example, it has denied district courts jurisdiction to consider orders of removal, 8 U.S.C. § 1252(a)(5), and CAT claims, 8 U.S.C. § 1252(a)(4), but neither provision affects my jurisdiction because Compere has not asked me to review either his removal order or the BIA's decision on his CAT claim.  Congress has also denied jurisdiction to any court to review most discretionary immigration decisions, 8 U.S.C. § 1252(a)(2)(B)(ii).  As I explain below, however, the decision at issue here is not discretionary because Compere has a right under federal law to litigate his motion to reopen.

General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."[9]

## 2. Suspension Clause

The right to seek habeas corpus relief is fundamental to the Constitution's scheme of ordered liberty.  Habeas corpus is "a writ employed to bring a person before a court, most frequently to ensure that the party's imprisonment or detention is not illegal." Boumediene v. Bush, 553 U.S. 723, 737 (2008) (quoting Black's Law Dictionary 728 (8th ed. 2004)).  Blackstone called it "the most celebrated writ in English law," 3 Blackstone's Commentaries 129 (1791), and deemed the Habeas Corpus Act of 1679 "the bulwark of the British Constitution."

---

[9] The Supreme Court recently addressed the scope of both § 1252(b)(9) and § 1252(g) in Jennings v. Rodriguez, 138 S. Ct. 830 (2018).  There, three justices in the plurality and three in dissent agreed that neither provision barred the court from exercising habeas corpus jurisdiction over a claim that the petitioner was entitled to a bond hearing while removal proceedings were pending.  Several lower courts have also concluded that the provisions do not apply to petitions seeking a stay of a removal order in certain circumstances.  See, e.g., You, Xiu Qing v. Nielsen, 321 F. Supp. 3d 451, 456-59 (S.D.N.Y. 2018) (§ 1252(b)(9) and § 1252(g)); Jimenez v. Nielsen, 334 F. Supp. 3d 370, 381-82 (D. Mass. 2018) (§ 1252(b)(9)); Chhoeun v. Marin, 306 F. Supp. 3d 1147, 1158 (C.D. Cal. 2018) (§ 1252(b)(9) and § 1252(g)).  Compere's claim appears to be subject to § 1252(b)(9) because it arises directly from his removal proceeding.  It also appears to be subject to § 1252(g) because it arises from an attempt by the Attorney General to execute a removal order.  Accordingly, I assume for purposes of analysis that this Court's jurisdiction to hear Compere's claim is limited by both provisions unless their application is barred by the Suspension Clause.

4 Blackstone's Commentaries 438 (1791).  In the penultimate
Federalist Paper, Alexander Hamilton praised the establishment
of the writ as a defense against "the favorite and most
formidable instruments of tyranny."  The Federalist No. 84, p.
251 (R.M. Hutchins ed. 1952).  Indeed, the "great writ of
liberty", see Darr v. Burford, 339 U.S. 200, 225 (1950)
(Frankfurter, J., dissenting), is "the only common-law writ to
be explicitly mentioned" in the Constitution.  Hamdi v.
Rumsfeld, 542 U.S. 507, 558 (2004) (Scalia, J., dissenting)
(citing U.S. Const. Art. I, § 9, cl. 2.).

     Our Constitution followed its English counterpart in
permitting legislative suspension of the writ in extreme
circumstances.  In England, "the parliament only, or legislative
power, whenever it sees proper, [could] authorize the crown, by
suspending the habeas corpus act for a short and limited time,
to imprison suspected persons without giving any reason for so
doing."  1 Blackstone's Commentaries 132 (1791).  The United
States Constitution, however, does not permit suspension of the
writ "whenever [the legislature] sees proper," but rather
guarantees in the Suspension Clause that "The Privilege of the
Writ of Habeas Corpus shall not be suspended, unless when in
Cases of Rebellion or Invasion the public Safety may require
it."  U.S. Const. Art. I, § 9, cl. 2.

Because of the Suspension Clause, "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'"[10]  I.N.S. v. St. Cyr, 533 U.S. 289, 300

---

[10] A divided Sixth Circuit panel recently concluded in Hamama v. Homan, 2018 WL 6722734 (6th Cir. Dec. 20, 2018), that the Suspension Clause is not implicated by a habeas corpus petition that seeks a stay of removal rather than an order releasing the petitioner from custody because such "removal based claims fail to seek relief that is traditionally cognizable in habeas . . . ." Id. at *4.  The government cites Hamama but, with good reason, it has not presented a developed argument that a stay of removal is an impermissible form of relief in habeas corpus cases.

As a preliminary matter, it is important to bear in mind that "[t]hroughout the history of the United States, the writ of habeas corpus has played a vital role in immigration cases as a vehicle for challenging deportation and exclusion orders (now commonly called 'removal orders.')"  Hertz and Lieberman, Federal Habeas Corpus Practice and Procedure § 42.1 (7th ed. 2017).  Cases supporting this proposition are legion.  See, e.g., I.N.S. v. St. Cyr, 533 U.S. 289 (2001); Heikkila v. Barber, 345 U.S. 229, 235 (1953); United States ex Rel. Vajtauer v. Comm. of Immigration, 273 U.S. 103, 106 (1927).  Thus, a petitioner facing a removal order is entitled to challenge that order in a habeas corpus petition unless Congress has lawfully stripped the court of its jurisdiction to act.

It is also quite clear that a stay to prevent a petitioner's removal in violation of federal law is a permissible form of habeas corpus relief.  The only Supreme Court case the Hamama majority relies on to support its contrary conclusion, Munaf v. Geren, 553 U.S. 674 (2008), is easily distinguishable for the reasons cited in Judge White's able dissent, 2018 WL 6722734 at *10.  Further, at least in this circuit, it has long been accepted that a habeas corpus petitioner may seek a stay of removal as a permissible form of habeas corpus relief where the stay is needed to protect the petitioner's rights under federal law.  See Foroglou v. Reno, 241 F.3d 111, 114 (1st Cir. 2001); Wallace v. Reno, 194 F.3d 279, 285 (1st Cir. 1999).  Given this strong legal foundation, I am unpersuaded by the Hamama majority's conclusion that the

(2001) (quoting Heikkila v. Barber, 345 U.S. 229, 235 (1953)).

Nevertheless, "Congress has wide latitude in choosing which remedy or remedies are appropriate" for the violation of a particular right, even a constitutional right. Aguilar, 510 F.3d at 17 (citing Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1366 (1953)). Thus, "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." Swain v. Pressley, 430 U.S. 372, 381 (1977). Conversely, however, the Suspension Clause is violated where habeas corpus relief is foreclosed and alternative remedies are inadequate to ensure that the petitioner's continued custody does not violate federal law. See Boumediene, 553 U.S. at 792.

My task, therefore, is to determine whether the administrative remedies that are available to Compere to test the lawfulness of the government's proposed action are either inadequate or ineffective as a substitute for habeas corpus relief. In answering this question, I begin by describing Compere's right under federal law to litigate his motion to reopen and then explain why the administrative review process is

_____

Suspension Clause is not implicated by a habeas corpus petition that seeks a stay of removal.

not an adequate substitute for habeas corpus relief in cases
where the government proposes to remove the petitioner to a
place where he will be unable to litigate his motion to reopen.

### 3. Motions to Reopen

Congress has granted aliens facing a removal order the
right to file a single motion to reopen removal proceedings
within 90 days of the entry of a removal order.[11] 8 U.S.C.
§ 1229a(c)(7).  Aliens also are entitled to obtain judicial
review in the courts of appeals from decisions denying motions
to reopen.  Mata v. Lynch, 135 S. Ct. 2150, 2154 (2015).  As the
Supreme Court has explained, the right to file a motion to
reopen is "an 'important safeguard' intended 'to ensure a proper
and lawful disposition' of immigration proceedings." Kucana v.
Holder, 558 U.S. 233, 242 (2010) (quoting Dada v. Mukasey, 554
U.S. 1, 18 (2008)).  The First Circuit Court of Appeals
underscored the importance of this right in Santana v. Holder,
731 F.3d 50, 61 (1st Cir. 2013), where the court concluded that
an alien's statutory right to litigate a motion to reopen could
not be curtailed by regulations that both barred the filing of

---

[11] The BIA has also adopted a regulation that authorizes a
removal proceeding to be reopened the authority to reopen a
removal proceeding at any time.  See 8 C.F.R. 1003.2.  This
Memorandum and Order addresses only motions to reopen that are
authorized by statute.

motions to reopen after removal and deemed existing motions to
be withdrawn once an alien is removed.

The filing of a motion to reopen in the BIA does not
automatically stay proceedings. 8 C.F.R. § 1003.2(f). An
alien, however, may request an emergency stay of removal. See
BIA Practice Manual §§ 6.4(b), 6.4(d)(i), 1999 WL 33435431 at
*2-3. An emergency stay request is discretionary and "may be
submitted only when an alien is in physical custody and is
facing imminent removal." BIA Practice Manual § 6.4(d)(i), 1999
WL 33435431 at *3. Further, because judicial review in the
court of appeals is "available only in judicial review of a
final order," an alien may not appeal the denial of an emergency
motion to stay. 8 U.S.C. § 1252(b)(9); Gando-Coello v. I.N.S.,
857 F.2d 25, 26 (1st Cir. 1988) (holding, under previous
immigration statute, that circuit court jurisdiction is limited
to review of "final orders of deportation," and that "a denial
of a stay of deportation pending disposition of a motion to
reopen is not a 'final order' . . . .") (citing 8 U.S.C. §
1105a(a)). For the same reason, an alien cannot file with the
court of appeals a motion to stay pending the BIA's disposition
of a motion to reopen. In other words, whether or not an alien
files an emergency motion to stay with the BIA, and whether or
not the BIA acts on such a motion, the court of appeals is

18

without jurisdiction to entertain a request to stay in connection with a motion to reopen pending before the BIA.

In short, because no Article III court has been granted jurisdiction either to review the denial of an emergency motion to stay while a motion to reopen is pending, or to entertain a motion to stay pending the BIA's ruling on a motion to reopen, the government takes the position that it has the absolute and unreviewable discretion to remove an alien while a motion to reopen is pending.

### 4. Adequacy of Administrative Review

The removal of an alien while his motion to reopen remains unresolved does not deprive him of his ability to litigate the motion in most cases because he can continue to press his argument before both the BIA and the court of appeals after he is removed. See Santana, 731 F.3d at 60. In most such cases, therefore, jurisdiction-stripping provisions do not violate the Suspension Clause because the existing administrative scheme is an adequate substitute for habeas corpus relief. See, e.g., Higgins v. Strafford Cty. Dep't of Corrections, 2018 DNH 050, 2018 WL 1278302, (D.N.H. Mar. 12, 2018). Compere argues, however, that his case is different because the conditions he will face in Haiti if he is removed will make it impossible for him to litigate his motion to reopen. Given these circumstances, he claims that he cannot be barred from seeking a

stay of removal from this Court without violating the Suspension Clause because existing law does not give him any effective alternative way to litigate his motion to reopen. The government challenges Compere's claim by arguing that it has provided him with an adequate substitute for habeas corpus relief even if he will be unable to litigate his motion to reopen after he is removed because it allowed him to seek an emergency stay of removal from the BIA. I am unpersuaded by the government's argument.

As I have explained, a decision by the BIA to grant or deny an emergency motion to stay is discretionary and unreviewable by the court of appeals. Accordingly, if the BIA denies an alien's motion to stay and his removal will foreclose his ability to litigate a motion to reopen, the alien will be left with no way to test the lawfulness of his removal in an Article III court either before or after it occurs. The inadequacy of an emergency motion to stay as a substitute for an alien's statutory right to litigate a motion to reopen in such circumstances was recognized by the First Circuit in Santana, where the Court observed that "conditioning a statutory right [to file a motion to reopen] on the government's grace [in ruling on an emergency motion to stay] may be a less improper deviation from the statute, but it is an improper one nonetheless." Santana, 731 F.3d at 60.

The same reasoning leads me to conclude that an emergency motion to stay is an inadequate substitute for habeas corpus relief in this case.  Compere claims that he will be denied his right to litigate his motion to reopen if he is removed while his motion is pending.  Because the BIA's denial of Compere's emergency motion to stay is discretionary and unreviewable, the existing administrative review process will leave him with no ability to challenge an adverse ruling on his motion to reopen if he is removed before the motion is resolved.  Habeas corpus is thus Compere's only option to test the lawfulness of the government's proposed action.  In such circumstances, the jurisdiction-stripping provisions cannot be applied to deprive this Court of its habeas corpus jurisdiction without violating the Suspension Clause.

In summary, Compere has a statutory right to file a motion to reopen with the BIA and he has an associated right to seek judicial review in the court of appeals from a decision by the BIA denying such a motion.  If, as he claims, he will lose his ability to litigate his motion to reopen if he is removed to Haiti, the government's proposal to remove him before it acts on his motion will deny him an important procedural right grounded in federal law.  Because habeas corpus is the only means available to Compere to protect this important right, the Suspension Clause prevents the jurisdiction-stripping provisions

from being used to deny this Court jurisdiction to hear his claim.

**B.   Merits**

Compere's entitlement to a stay turns on his contention that he will be unable to litigate his motion to reopen if he is removed to Haiti before the motion is decided.  The parties view the evidence supporting this contention differently.[12]  As I explain in detail below, I conclude that Compere has proven his claim.  Accordingly, I grant his request for a stay.

I base this conclusion on several subsidiary findings. First, it is likely that Compere will be detained for some period of time as soon as he arrives in Haiti.  His expert, Michelle Karshan, testified that Compere will be interrogated upon arrival by the anti-drug trafficking force and that he may be detained if that unit is unavailable when he arrives.  See Doc. No. 7-3 at 8.  His newly obtained expert, Chelsey Kivland, submits in her affidavit that "Criminal deportees in Haiti have, in the past, faced long-term detention in Haitian prison upon arrival."  See Doc. No. 9-14 at 2.  When asked what the chances were that "the detention will be long" for Compere, Karshan

_____

[12] The BIA has not considered whether Compere's removal to Haiti will impair his ability to litigate his motion to reopen. Further, as I have explained, the court of appeals lacks jurisdiction to consider the issue.  With the agreement of the parties, I base my findings on the issue on the record below and the additional materials submitted by the parties.

testified that "generally people are not" detained for long periods, but that it does occasionally happen, and that if authorities learned that his uncle was Mr. Renois it would be "very likely that they would detain him." See Doc. No. 13-2 at 84-85.

Even if Compere is not detained upon arrival, he may spend time confined in a "temporary house." Kivland submits that deportees who have no family in Haiti "can be detained for a period of thirty days or until someone can identify and claim them." See Doc. No. 9-14 at 2. It is undisputed that Compere's only family contact in Haiti is Renois, his uncle-by-marriage. Mr. Renois is a well-known journalist and anti-corruption advocate and was an opposition presidential candidate in 2015. He has not seen Compere in fifteen years. Doc. No. 13-2 at 53. Marie Gabrielle Renois, Mr. Renois's wife and Compere's aunt, testified via phone in the Immigration Court that she and her husband "will have the moral obligation to take him in our house because we cannot leave him on the street." Doc. No. 13-2 at 139. Ms. Renois, however, lives in Mali, and left Haiti after the 2015 election because she felt unsafe. Doc. No. 13-2 at 114. The record does not contain a representation by Mr. Renois on this issue. If there were some reason why Mr. Renois was unable to retrieve him, Compere would be sent to detention in a "temporary house" because, in the words of Ms. Renois, "If

Patrice moves to Haiti, he has no one – no other family in the country but me." Doc. No. 13-2 at 119.

Even if Compere is released quickly from detention, he will face significant obstacles to effectively litigating his case. Mr. Renois is a targeted man. Ms. Renois testified the family receives threats and has had "people entering in [their] yard." Doc. No. 13-2 at 114. She left the country because she did not feel safe. Doc. No. 13-2 at 114. The family has security guards at home. Doc. No. 13-2 at 115. When Ms. Renois visits Haiti, she does not leave the house but for exceptional circumstances, and when she does, she requires security guards and a driver. Doc. No. 13-2 at 137. Recently, "some people with masks came to the neighborhood, and you know, our gates, and they shot a few times with automatic weapons." Doc. No. 13-2 at 118. "[I]f God was not protecting us," she avers, "we don't know what could happen." Doc. No. 13-2 at 115.

In addition to these obstacles to Compere's ability to litigate his motion to reopen after removal, Compere "barely" speaks Creole. He has not been to Haiti since he was two. He will be almost entirely dependent on his uncle, who lives in a state of heightened security. All these factors hamper his ability to effectively communicate with his legal counsel and stay apprised of and available for developments before the BIA.

Taken in combination — the possibility of detention while awaiting the drug task force, the potential that he will be detained in temporary housing if his uncle is unable to retrieve him, the security threats under which he will live when he is housed with Mr. Renois — the record demonstrates that, more likely than not, Compere would be unable to litigate his motion to reopen if he is removed to Haiti.

## III.    Conclusion

For the reasons set forth in this Memorandum and Order, I determine that the government's plan to remove Compere to Haiti while his motion to reopen remains unresolved will violate his rights under federal law.  Although I could conditionally order Compere's release unless the government acts on his motion in a timely fashion, I have no reason to doubt that the government will either promptly rule on his motion to reopen or seek appeal from this ruling.  Accordingly, I limit the relief ordered to a stay of removal that will remain in place until Compere's motion to reopen is resolved and he has been given an opportunity to appeal any adverse ruling.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

January 24, 2019

cc:   Gilles R. Bissonnette, Esq.
Henry Klementowicz, Esq.
Ragini Shah, Esq.
SangYeob Kim, Esq.
Michael T. McCormack, Esq.
T. David Plourde, Esq.
Terry L. Ollila, Esq.